United States District Court
Southern District of Texas
**ENTERED**
January 03, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MICKEY WAYNE BOSWELL, § § Petitioner, § VS. § CIVIL ACTION NO. 2:19-CV-00246 § LORIE DAVIS, § § Respondent. § | |

# MEMORANDUM AND RECOMMENDATION

Petitioner Mickey Wayne Boswell is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division and is currently incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se*, Boswell filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 23, 2019. (D.E. 1). Liberally construed, Boswell claims that McConnell Unit officials violated his due process and equal protection rights under the Fifth and Fourteenth Amendments, along with his right to confront witnesses under the Sixth Amendment, during disciplinary proceedings. Respondent filed a motion for summary judgment on November 18, 2019, to which Boswell has responded. (D.E. 12, 18). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Boswell's § 2254 petition be denied. It is further recommended that a Certificate of Appealability ("COA") be denied.

## I. JURISDICTION

Jurisdiction and venue are proper in this court because the actions about which Boswell complains occurred in Beeville, Bee County, Texas, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## II. BACKGROUND

### a. Disciplinary and Grievance Records

Boswell is serving a 50-year total sentence after being convicted of theft, unauthorized use of a motor vehicle, and four counts of failure to comply with sex offender registration requirements. (D.E. 12-1 at 2-4). Boswell also has two prior 1994 convictions for indecency with a child under Texas Penal Code § 21.11(a)(1). (*Id.* at 5-6). Boswell does not complain about his convictions, however, but instead challenges the results of a disciplinary hearing. (D.E. 1 at 6-7).

In December 2018, a correctional officer was conducting random strip searches on offenders when he found hand-drawn maps of the Beeville area on an offender. (D.E. 13-2 at 17-20, 24). The offender indicated that he had gotten the maps from Boswell and was supposed to deliver them to another offender. (*Id.* at 23). When the officers asked Boswell about the maps, he admitted drawing them, but stated that he was trying to get them to his friend in another dorm because he had land in the area. (*Id.*). An offense report was brought against Boswell charging him with attempted escape for drawing maps of Beeville and the surrounding area. (*Id.* at 15).

The disciplinary report and hearing record for disciplinary case number 20190109689 indicated that Boswell prepared 20 questions for Sergeant Nino at the hearing, but was denied permission to ask most of them because they were deemed irrelevant. (*Id.* at 3-4). Boswell denied attempting to escape and stated that he was nearly up for parole. (*Id.* at 4). Following the January 9, 2019, hearing, Boswell was found guilty of attempted escape and lost 45 days of recreation privileges, 60 days of commissary privileges, 60 days of telephone privileges, had his visitation privileges suspended for 3 months, his line class reduced, and lost of 364 days of good time. (*Id.*).

In his Step 1 grievance, Boswell alleged that several aspects of the disciplinary proceedings violated his due process rights. (D.E. 13-1 at 3). He stated that he had recently filed an excessive force grievance against one officer and that his correspondence with a senator and the Houston Chronicle, which identified Sergeant Nino as a member of two retaliatory groups of guards, was confiscated. Nino subsequently questioned Boswell about a map of Beeville that was confiscated from another offender. Boswell denied drawing the map, but he was placed in prehearing detention and a disciplinary case was brought against him. Boswell contended that the elements of attempted escape were not proven at the disciplinary hearing and that several details in the offense report were false. (*Id.* at 3-4). The warden concluded that no further action was warranted on Boswell's grievance. (*Id.* at 4).

Boswell then filed a Step 2 grievance, arguing that the warden was biased and should not have been assigned the grievance because he was present at the trial and had Boswell removed from the room at one point. (*Id.* at 5). Boswell reiterated that the

elements of attempted escape had not been proven and that the allegations against him were a lie fabricated by Nino to retaliate against him. (*Id.* at 5-6). Boswell's grievance was again denied. (*Id.* at 6).

### b. Petition and Claims

In his petition, Boswell first contends that his due process and equal protection rights were violated because the charging document did not inform him of the elements of the offense and the offense report gave the wrong date for the alleged offense. (D.E. 1 at 6). Second, he contends that his due process and equal protection rights were violated because he was not served with notice of the charge within 72 hours of being placed in pre-hearing detention and he stayed in pre-hearing detention for 16 days. (*Id.*). Third, Boswell asserts that his due process and equal protection rights were violated because there was no evidence presented at the hearing to establish his intent, an overt act, or possession of contraband. (*Id.* at 7). Finally, he argues that his confrontation clause and due process rights were violated because he was only allowed to ask the charging officer 4 of the 20 questions he had prepared. (*Id.*).

## III. DISCUSSION

In the motion for summary judgment, Respondent first argues that Boswell's loss of privileges and reduction in line class are not cognizable under federal habeas law because changes in the condition of confinement do not implicate due process. (D.E. 12 at 8-9). Second, Respondent contends that the loss of good time credit does not invoke due process concerns because Boswell's two prior convictions for indecency with a child render him ineligible for mandatory supervision. (*Id.* at 10-11). Similarly, Respondent

argues that Texas parole statutes do not confer a liberty interest, so any effect the disciplinary hearing has on Boswell's parole eligibility does not invoke due process concerns. (*Id.* at 11).

Boswell responds that his prior convictions were in 1993 and that he earned good time credits and received mandatory supervision at the time. (D.E. 18 at 2). He argues that he had a plea agreement for those convictions and that the Respondent's exhibit showing the details of each conviction is false. (*Id.*). Second, Boswell argues that his eligibility for mandatory supervision should be determined under the laws in effect in 1993, when he pleaded guilty to his prior offenses, and that the state's argument is a "bill of attainder" because it singles him out and prevents him from seeking redress on his grievance. (*Id.* at 3). Finally, he reiterates his due process arguments. (*Id.* at 5-6).

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process and acknowledged that, under certain circumstances, a state may create liberty interests that are protected by the Due Process Clause. *Id.* at 483-484 (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976)). However, the interests generally are limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

5

The Court further noted that the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals and that, while prisoners do not shed all constitutional rights at the prison gate, "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* at 485 (quoting *Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 US. 119, 125 (1977), and *Price v. Johnston*, 334 U.S. 266, 285 (1948)). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* The touchstone of the inquiry into the existence of a protected, state-created liberty interest is the nature of the condition in relation to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (citing *Sandin*, 515 U.S at 484).

"[S]peculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995) (*citing Meachum*, 427 U.S. at 229, n.8). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and

6

control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing Tex. Code Crim. P. art. 42.18 § 2(2)).[1] Prisoners earn good time credits that are added to their actual days served in prison to calculate their release date. Tex. Gov't Code § 508.147. The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time. *Malchi*, 211 F.3d at 957-958.[2] However, prisoners who commit certain offenses are excluded from eligibility for mandatory supervision. *See* Tex. Gov't Code § 508.149(a) (listing offenses that render an inmate ineligible for release to mandatory supervision). Indecency with a child, in violation of Tex. Penal Code § 21.11, is an excluded offense. *Id.* § 508.149(a)(5).

Here, Boswell cannot make out a due process cause of action based on either his reduction in line class, his loss of good time, or his loss of other privileges. First, as to his reduction in line class, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and, in turn, on the amount of time he is in custody. However, Boswell has no protectable liberty interest in a particular custodial classification. *Harper*, 174 F.3d at 719. Specifically in the case of a line class designation, the Fifth Circuit has held that the timing of an inmate's release is too speculative to afford him a constitutionally

---

[1] Currently located at Tex. Gov't Code § 508.001(5).

[2] The Fifth Circuit's holding applied to a previous version of the Texas mandatory supervision program, which has since been amended. *See Malchi*, 211 F.3d at 958. The Fifth Circuit has concluded that prisoners have a protected liberty interest under the amended version as well. *Teague v. Quarterman*, 482 F.3d 769, 776 (5th Cir. 2007).

cognizable claim to the right to a particular time-earning status. *Malchi*, 211 F.3d at 959. Thus, Boswell cannot make out a due process claim based on his reduction in line class.

Second, as to his loss of good time, Boswell's convictions for indecency with a child preclude his release to mandatory supervision. Tex. Gov't Code § 508.149(a)(5). Because Boswell is not eligible for release to mandatory supervision, he does not have a liberty interest in earning or keeping good time credits, and thus has failed to make out a claim that his due process rights have been violated. *See Malchi*, 211 F.3d at 957-958 (discussing when prisoners have a liberty interest with respect to their good time). Boswell's loss of other privileges does not present an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484-87 (concluding that even placement in disciplinary segregation does not present a dramatic departure from the basic conditions of an offender's sentence).

Finally, although Boswell also references the equal protection clause, his claims cannot be construed, even liberally, as arising under that clause. Similarly, although Boswell references the confrontation clause, a prisoner does not have a right to confrontation or cross-examination during prison disciplinary proceedings. *Morgan v. Dretke*, 433 F.3d 455, 457 (5th Cir. 2005).

### IV.    CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Boswell has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*,

8

211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Where a claim is dismissed on a procedural ground, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, because reasonable jurists would not find it debatable that Boswell failed to state a claim for a violation of a constitutional right, it is recommended that a COA be denied.

## V.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 12) be GRANTED and Boswell's § 2254 petition be DENIED.  In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 3rd day of January, 2020.

                                           B. JANICE ELLINGTON
                                           UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).